```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>     v.<br><br>HELEN KRAMER, et al.,<br><br>              Defendant. | Civil Action No. 89-4340 (JBS) |
| STATE OF NEW JERSEY,<br>DEPARTMENT OF ENVIRONMENTAL<br>PROTECTION,<br><br>              Plaintiff,<br><br>     v.<br><br>ALMO ANTI-POLLUTION SERVICES<br>CORP., et al.,<br><br>              Defendants. | Civil Action No. 89-4380 (JBS)<br><br><br><br><br><br>**OPINION** |

APPEARANCES:

Glenn Anthony Harris, Esq.
Michael E. Brown, Esq.
BALLARD SPAHR ANDREWS & INGERSOLL
Plaza 1000
Main Street
Suite 500
Voorhees, NJ 08043
    Attorney for Third-Party Plaintiffs Rohm & Haas Company;
    E.I. duPont de Nemours & Co.; Elf-Atochem North America,
    Inc.; Cytec Industries (on behalf of American Cyanamid Co.);
    Mobil Research and Development Corp.; Chemical Leaman Tank
    Lines; Continental Can; and Carpenter Technology, Inc.

Richard F. Ricci, Esq.
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, NJ 07068-1791
    Attorney for Third-Party Defendant Alumax, Inc.

**SIMANDLE,** District Judge:

## I. INTRODUCTION

This matter is before the Court upon the motion of the Settling Work Defendants[1] [Docket Item 109] to file a Second Amended Third-Party Complaint (the "Proposed Amended Complaint" or "PAC"). This is an extensively litigated Superfund case in which the vast majority of parties have settled and the lone claims remaining are those asserted by the Settling Work Defendants against Alumax Mill Products, Inc. ("Alumax"), the sole non-settling Defendant.

During the pendency of this litigation, in 2007, the Supreme Court issued its decision in United States v. Atlantic Research Corp., 551 U.S. 128 (2007), a case which clarified the statutory avenues under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") through which potentially responsible parties ("PRPs") can seek contribution and cost recovery from other PRPs relating to the remediation of hazardous waste sites. The Settling Work Defendants seek to

---

[1] As the Court explained in its September 3, 1998 Opinion, the Settling Work Defendants are a subset of the parties to Consent Decrees entered earlier in this action. The Settling Work Defendants agreed to "perform studies needed by [the Environmental Protection Agency] to perform its five-year reviews." United States v. Kramer, 19 F. Supp. 2d 276 (D.N.J. 1998). The Settling Work Defendants are: Rohm & Haas Company; E.I. duPont de Nemours & Co.; Elf-Atochem North America, Inc.; Cytec Industries (on behalf of American Cyanamid Co.); Mobil Research and Development Corp.; Chemical Leaman Tank Lines; Continental Can; and Carpenter Technology, Inc. Id. at 276 n.1.

amend their Third-Party Complaint in order to bring their claims in line with the changes in CERCLA jurisprudence brought about by Atlantic Research.  For the reasons set forth below, the Court will grant the Settling Work Defendants' motion.

## II.  BACKGROUND

### A.  Remediation of the Helen Kramer Landfill

The Court reviewed the extensive factual and procedural background of this litigation in detail in its November 19, 2008 Opinion [Docket Item 106], and it will review herein only those facts relevant to the disposition of the Settling Work Defendants' motion.  This case arises out of two consolidated actions brought by the United States and the State of New Jersey pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover costs incurred in the remediation of the Helen Kramer Landfill (or "Landfill") in Mantua, New Jersey.  The Helen Kramer Landfill is "a major Superfund site at which the federal government and the State of New Jersey . . . incurred substantial costs . . . to remedy conditions at the landfill and its environs."  United States v. Kramer, 953 F. Supp. 592, 595 (D.N.J. 1997).

The scope of the governmental remediation efforts, the resultant cost recovery lawsuits, and eventual settlement among direct and third-party defendants have been more fully described in multiple opinions by this Court.  See, e.g., id.; Kramer, 19

3

F. Supp. 2d 273; <u>United States v. Kramer</u>, No. 89-4340, 2008 WL 5046846 (D.N.J. Nov. 19, 2008).  In brief summary:

> The Helen Kramer Landfill in Mantua Township, New Jersey, was declared a federal Superfund site and placed upon the national priorities list by the U.S. Environmental Protection Agency pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq.  The United States undertook the Remedial Investigation and Feasibility Study, the Remedial Design, and remedy construction, which was largely completed in 1994.  These remedial costs, together with enforcement costs and prejudgment interest to January, 1998, have amounted to approximately $123 million.  The United States commenced suit in 1989 to recover all response and remedial costs under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and the government had by 1997 filed a Third Amended Complaint against the Direct Defendants alleged to be generators and transporters of hazardous substances deposited at the Landfill.  After extensive litigation and settlement efforts, the United States and Direct Defendants reached agreement upon a proposed Consent Decree to resolve the United States' claims against all viable Direct Defendants and a wide majority of the Third-Party Defendants.
>
> Similarly, the State DEP commenced suit in 1989 and reached substantial agreement with a subgroup of the Settling Defendants to enable operation and maintenance functions at the Site to be transferred to these settling parties in 1997. The Site had been turned over to the NJDEP for oversight and maintenance on May 11, 1994.

<u>Kramer</u>, 19 F. Supp. 2d at 276-77.  The Court approved of and entered the federal and state Consent Decrees in an Opinion and Order dated September 3, 1998.  <u>Id.</u> at 289.

Pursuant to the terms of the Consent Decrees, the Settling Work Defendants (along with the other settling Defendants) have paid settlement funds as reimbursement for the Government's response costs into the Helen Kramer Landfill Superfund Site

4

Qualified Settlement Fund Trust.  (U.S. Consent Decree ¶ 4.) Additionally, the Settling Work Defendants have made payments to the Helen Kramer Landfill Superfund Site Environmental Remediation Trust, which was established not for reimbursement of past costs, but in order to fund ongoing and future studies and investigations at the Landfill for the EPA.  (Id.)

**B.  Claims Against Alumax**

As the Court noted, supra, the only claims that remain in this case are those asserted by the Settling Work Defendants against Alumax, the sole non-settling PRP.  In their original Third Party Complaint (and in the subsequent amendments to that pleading), the Settling Work Defendants asserted a claim for contribution against Alumax pursuant to section 113(f)(1) of CERCLA, a claim for declaratory relief regarding Alumax's liability for future response costs pursuant to section 113(g)(2) of CERCLA, and a contribution claim pursuant to the New Jersey Spill Compensation and Control Act.[2]

---

[2] In its November 19, 2008 Opinion and Order [Docket Items 106 and 107], the Court addressed the parties' cross-motions for summary judgment as to the Settling Work Defendants' section 113(f)(1) claim.  The Court explained that the resolution of a section 113(f)(1) claim "envisions a two-part inquiry: First, the court must determine whether the defendant is 'liable' under CERCLA § 107(a); Second, the court must allocate response costs among liable parties in an equitable manner."  (Docket Item 106 at 16) (quoting Goodrich Corp. v. Town of Middlebury, 311 F.3d 154, 168 (2d Cir. 2002)).  As to the first question, the Court granted the Settling Work Defendants' motion for summary judgment and denied Alumax's cross-motion for summary judgment, finding that Alumax is a liable party under CERCLA.  (Id. at 31.)  The

As the Court explains in greater detail, infra, in 2007, the Supreme Court, in Atlantic Research, resolved a Circuit split concerning which statutory vehicles under CERCLA are available to a PRP which has entered into a settlement with the Government or incurred cleanup costs, and which seeks contribution or cost recovery from other PRPs.  The Supreme Court held that a PRP that has incurred cleanup costs may assert a claim under section 107(a) of CERCLA – which provides a cause of action for "cost recovery (as distinct from contribution)," 127 S. Ct. at 2338 – against another PRP.  Id. at 2338 n.6.  However, with regard to one of the precise matters at issue in this suit – where a "PRP . . . sustain[s] expenses pursuant to a consent decree following a suit under § 106 or § 107(a)" – the Court did not "decide whether these compelled costs of response are recoverable under § 113(f), § 107(a), or both."  Id.  Following Atlantic Research, the Settling Work Defendants moved to amend their Third-Party Complaint in order to assert a cost recovery claim against Alumax pursuant to section 107(a) and to revise their claim under section 113(f)(2).  The Court addresses the merits of this motion below.

---

issue of equitable allocation in this action remains to be considered.

**III. DISCUSSION**

    **A.  Standard of Review**

Under Rule 15(a)(2), Fed. R. Civ. P., after a party has been served with a responsive pleading, it "may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  As this Court has explained:

> Although "the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of that discretion."  Foman v. Davis, 371 U.S. 178, 182 (1962).  Among the legitimate bases for denying a plaintiff the opportunity to amend the complaint are "substantial or undue prejudice, . . . truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment."  Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (citation omitted).

Pappas v. Township of Galloway, 565 F. Supp. 2d 581, 591 (D.N.J. 2008).  The Court of Appeals has made clear that "substantial or undue prejudice to the nonmoving party . . . is the touchstone for the denial of an amendment," USX Corp. v. Barnhart, 395 F.3d 161, 166 (3d Cir. 2004) (internal quotations and citations omitted, emphasis added), and that "[f]or purposes of Rule 15, the term prejudice means undue difficulty in defending a lawsuit as a result of a change in tactics or theories on the part of the other party."  California Public Employees' Retirement System v. Chubb Corp., 394 F.3d 126, 171 (3d Cir. 2004) (brackets,

citations, and quotations omitted).

**B.   Analysis**

For the reasons now explained, the Court will grant the Settling Work Defendants' motion for leave to file a Second Amended Third-Party Complaint.

    1.   Causes of Action Under CERCLA After *Atlantic Research*

As the Court of Appeals recently explained, CERCLA was enacted in 1980 "to address the serious environmental and health risks posed by pollution," and the statute has two principal purposes:

> First, CERCLA is a remedial statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites. Second, the statute requires everyone who is potentially responsible for hazardous-waste contamination to contribute to the costs of cleanup.

E.I. DuPont de Nemours and Co. v. United States, 508 F.3d 126, 128-29 (3d Cir. 2007) (internal quotations and citations omitted).  The apportionment of cleanup costs among public and private entities undertaking cleanup efforts and PRPs is governed by the interplay between two of CERCLA's statutory provisions: section 107(a) and section 113(f).

Section 107(a) makes four classes of "covered persons" liable for:

> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

8

> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
>
> (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
>
> (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607(a)(4)(A)-(D). The Supreme Court has assumed without deciding that liability under section 107(a) is joint and several. See Atlantic Research, 127 S. Ct. at 2339 n.7. However, "courts will not hold a defendant jointly and severally liable . . . where the defendant can demonstrate the harm at a given site is 'divisible,' i.e., there are distinct harms or a reasonable basis for determining the contribution of each cause to a single harm." Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1513 (11th Cir. 1996) (cited approvingly in New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1122 n.6 (3d Cir. 1997)).

As distinct from section 107(a), section 113(f) provides a right of action for contribution among PRPs:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. . . . In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

42 U.S.C. § 9613(f)(1). Although the divisibility defense to a

9

section 107(a) claim referenced above has no application in the section 113(f) context, see Redwing Carriers, 94 F.3d at 1513-14, response costs in section 113(f) claims are distributed among PRPs in an equitable manner as determined by the Court. See § 9613(f)(1).

Whether and when a PRP can sue another PRP for contribution and/or cost recovery has been the subject of considerable attention by multiple Courts of Appeals and the Supreme Court in recent years. As the Supreme Court explained in Atlantic Research:

> In Cooper Industries [v. Aviall Services, Inc., 543 U.S. 157 (2004)], we held that a private party could seek contribution from other liable parties only after having been sued under § 106 or § 107(a). 543 U.S., at 161. This narrower interpretation of § 113(f) caused several Courts of Appeals to reconsider whether PRPs have rights under § 107(a)(4)(B), an issue we declined to address in Cooper Industries. Id., at 168. After revisiting the issue, some courts have permitted § 107(a) actions by PRPs. See Consolidated Edison Co. of N.Y. v. UGI Utilities, Inc., 423 F.3d 90 (C.A.2 2005); Metropolitan Water Reclamation Dist. of Greater Chicago v. North American Galvanizing & Coatings, Inc., 473 F.3d 824 (C.A.7 2007). However, at least one court continue[d] to hold that § 113(f) provides the exclusive cause of action available to PRPs. E.I. DuPont de Nemours & Co. v. United States, 460 F.3d 515 (C.A.3 2006).

Atlantic Research, 127 S. Ct. at 2334.

The Supreme Court resolved this Circuit split in Atlantic Research. The Court explained that with regard to the apportionment of cleanup costs among private parties,

> the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action to persons in

>different procedural circumstances. Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

Id. at 2338 (internal quotations and citations omitted). The Court recognized that this distinction becomes muddled where "a PRP . . . sustain[s] expenses pursuant to a consent decree following a suit under § 106 or § 107(a)," explaining that "[i]n such a case, the PRP does not incur costs voluntarily but does not reimburse the costs of another party." Id. at n.6. The Court declined to decide in Atlantic Research "whether these compelled costs of response are recoverable under § 113(f), § 107(a), or both," id., a matter that remains an open question.

       2.    Amendment of Settling Work Defendants' Pleading

The Settling Work Defendants seek to amend their pleadings in light of Atlantic Research. With regard to the funds paid by the Settling Work Defendants pursuant to the United States Consent Decree in order to reimburse the United States' past response costs, the Settling Work Defendants concede that they would only be able to assert a section 113(f) claim. With regard to the New Jersey Consent Decree, however, which addressed both

11

the State's own past response costs and the costs of the Settling Work Defendants' own response actions, the Settling Work Defendants seek to amend their pleading in order to assert a section 113(f) claim for the funds paid to reimburse the State for its past response costs, and both a section 107(a) claim and a section 113(f) claim for the costs they incurred in paying for ongoing remediation efforts.  See Atlantic Research, 127 S. Ct. at 2338 n.6 (declining to decide whether "compelled costs of response" incurred by a PRP pursuant to a consent decree "are recoverable under § 113(f), § 107(a), or both").

Recognizing that leave to file an amended pleading should be "freely give[n]," Fed. R. Civ. P. 15(a)(2), the Court will grant the Settling Work Defendants' motion.[3]  Leave to file an amended pleading is frequently granted where developments in the law

---

[3] At the outset, it bears emphasis that the Court makes no determination herein as to whether section 107(a) is a cognizable statutory vehicle for the Settling Work Defendants' claim against Alumax.  Alumax has not challenged the amendment on the grounds that the proposed section 107(a) claim would be futile, see In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997) (futility in this context "means that the complaint, as amended, would fail to state a claim upon which relief could be granted"), and in the absence of briefing by the parties, the Court declines to decide today whether a PRP can recover response costs incurred under a consent decree via a section 107(a) claim against another PRP.  Because Alumax did not raise the question of futility in opposing the motion presently under consideration, the Court denied without prejudice the letter application of the United States for leave to file an Amicus Curiae brief on the viability of such a section 107(a) claim.  (Docket Item 113 at 1-2.)  These matters are preserved for consideration upon a motion to dismiss at a later date.

occurring after the original pleading was filed have a bearing upon the claims and defenses in a case.  See, e.g., Morrone v. CSC Holdings Corp., 404 F. Supp. 2d 450, 456 (E.D.N.Y. 2005); Gregory v. Harris-Teeter Supermarkets, Inc., 728 F. Supp. 1259, 1260 (W.D.N.C. 1990).  Absent a showing that permitting the amendment would result in "substantial or undue prejudice," a party should be permitted to amend its pleading under such circumstances.  USX Corp., 395 F.3d at 166.

The Court cannot agree with Alumax that it would be unduly prejudiced by the proposed amendment to the Third-Party Complaint.  Alumax focuses most strenuously upon the risk that it could be subjected "to joint and several liability with no ability to compel equitable apportionment by asserting [a] Section 113 counterclaim."  (Opp'n Br. at 5.)  In support of this argument, Alumax draws the Court's attention to the Supreme Court's reasoning in Atlantic Research that "a defendant PRP in such a § 107(a) suit could blunt any inequitable distribution of costs by filing a § 113(f) counterclaim."  Atlantic Research, 127 S. Ct. at 2339.  In this case, Alumax argues, the Settling Work Defendants could not be subjected to such a counterclaim on account of the terms of the New Jersey Consent Decree, which provides:

> The parties agree, and by entering this Consent Decree, this Court finds, that Settling Defendants are entitled, as of the effective date of this Consent Decree, to protection from contribution actions or claims as

13

>     provided by Section 113(f)(2) of CERCLA, 42 U.S.C.
>     Section 9613(f)(2) . . . for all matters addressed in
>     this Consent Decree.

(New Jersey Consent Decree ¶ 76.)  According to Alumax, "because of the way this particular litigation has progressed, the contribution protection afforded by the New Jersey Consent Decree may well preclude Alumax from asserting a Section 113 counterclaim against the SWDs and deprive Alumax of the ability to blunt the inequity of the SWDs obtaining joint and several liability against it, as the Atlantic Research opinion contemplated."  (Opp'n Br. at 5-6.)  Such an outcome, Alumax maintains, would be unduly prejudicial.

The Court does not find Alumax's argument persuasive. First, with regard to Alumax's argument that permitting the Settling Work Defendants to assert a section 107(a) claim against it would risk exposing it to a disproportionate share of liability that it could not have anticipated, it has long been recognized that "[d]isproportionate liability, a technique which promotes early settlements and deters litigation for litigation's sake, is an integral part of the statutory plan." United States v. Cannons Engineering Corp., 899 F.2d 79, 92 (1st Cir. 1990); In re Tutu Water Wells CERCLA Litigation, 326 F.3d 201, 208 (3d Cir. 2003) ("the statutory scheme contemplates that those who are slow to settle ought to bear the risk of paying more") (citation omitted); United States v. Southeastern Pennsylvania Transp.

Authority, 235 F.3d 817, 825 (3d Cir. 2000) ("the intended effect of protecting settling parties from contribution claims is that non-settling defendants may bear disproportionate liability for their acts") (internal quotations and citations omitted); United Technologies Corp. v. Browning-Ferris Industries, Inc., 33 F.3d 96, 103 (1st Cir. 1994) (CERCLA's contribution protection provision, which "envisions that nonsettling parties may bear disproportionate liability" is "not a scrivener's accident"). The risk of disproportionate liability borne by non-settling PRPs has long been apparent, and this was a risk Alumax knowingly assumed when it elected to be the lone non-settling PRP.

Moreover, and more fundamentally, while the New Jersey Consent Decree's contribution protection provision may preclude Alumax from asserting a section 113(f) counterclaim against the Settling Work Defendants, Alumax is not, as it suggests, foreclosed from "blunt[ing]" the impact of the Settling Work Defendants' section 107(a) claim. Atlantic Research, 127 S. Ct. at 2339. Rather, as the Court explained above, section 107(a) and section 113(f) both afford defendants the opportunity to reduce their exposure to disproportionate liability – by proving that the harm in question is divisible in the case of section 107(a), and through the equitable apportionment of damages by the Court in the case of section 113(f). See, e.g., Redwing Carriers, 94 F.3d at 1513 ("When a defendant successfully

demonstrates the harm at the site is divisible, it will only be held liable for that portion of the cleanup costs attributable to its conduct"). Indeed, Alumax has represented to the Court that it "has a strong divisibility defense to liability under CERCLA," (Sum. J. Opp'n Br. at 6), which defense, if established, would cause Alumax to be liable only for the percentage of cleanup costs for which it was responsible. Section 107(a), in short, affords defendant PRPs the opportunity to avoid being subjected to disproportionate liability, further undercutting Alumax's suggestion that it would be unduly prejudiced if the Settling Work Defendants were permitted to amend their pleading.

A final point on the risk of prejudice associated with the Settling Work Defendants' proposed amendment is in order. Under CERCLA, the Settling Work Defendants are entitled to attempt to recoup from Alumax some portion of the money they expended in settling their claims with the United States and with New Jersey. With regard to the costs the Settling Work Defendants incurred pursuant to the New Jersey Consent Decree in paying for ongoing remediation efforts, while it is clear that the Settling Work Defendants are entitled to attempt to recoup a percentage of such expenses from Alumax, after <u>Atlantic Research</u>, it is unclear "whether these compelled costs of response are recoverable under § 113(f), § 107(a), or both." <u>Atlantic Research</u>, 127 S. Ct. at 2338 n.6. If the Settling Work Defendants were not permitted to

16

bring their pleadings into conformity with Atlantic Research, and if it is ultimately determined that section 107(a), and not section 113(f), is the proper statutory vehicle for cost recovery under the circumstances described in Footnote 6 of Atlantic Research, then the Settling Work Defendants would be foreclosed from attempting to recover such expenses from Alumax altogether. Such a result, which would impose a disadvantage on those parties that elected to settle their claims early in this litigation, would be inconsistent with "CERCLA's objective of encouraging settlement." Marsh v. Rosenbloom, 499 F.3d 165, 180 (2d Cir. 2007).

As the Court explained in Note 3, supra, the Court makes no determination herein as to whether the Settling Work Defendants' section 107(a) claim against Alumax states a claim for which relief may be granted; the question of whether the costs the Settling Work Defendants incurred pursuant to the New Jersey Consent Decree in paying for ongoing remediation efforts are recoverable "under § 113(f), § 107(a), or both," is reserved for a later date. Atlantic Research, 127 S. Ct. at 2338 n.6. It suffices that the Settling Work Defendants' position is not frivolous or implausible. In light of the fact that leave to file amended pleadings under Rule 15 should be "freely give[n]," Fed. R. Civ. P. 15(a)(2), and having concluded that Alumax would not be unduly prejudiced by the Settling Work Defendants'

proposed amended pleading, the Court will grant the Settling Work Defendants' motion.

## IV. CONCLUSION

For the reasons explained above, the Court will grant the Settling Work Defendants' motion to file a Second Amended Third-Party Complaint.  The accompanying Order is entered.


**July 27, 2009**             **s/ Jerome B. Simandle**
Date                   JEROME B. SIMANDLE
                        United States District Judge